A93A1509. MOORE v. BARGE et al.
(436 SE2d 746)

ANDREWS, Judge.

In July 1984, Moore was hired by Charter Properties, Inc. (Charter) pursuant to an oral employment agreement of indefinite duration, under which Moore was to be compensated for real estate development work by receiving a salary and an equity interest in certain properties developed by Charter. Charter was wholly owned by Barge, Wagener and Lesley. Pursuant to the employment agreement, Moore obtained an interest as a limited partner in four limited partnership agreements with Barge, Wagener and Lesley on properties which had been developed by Charter. In December 1989, acting as president of Charter, Lesley terminated Moore's employment.

Moore brought this action against Barge, Wagener and Lesley alleging that the defendants: (1) breached the limited partnership agreements by engaging in various misappropriations of funds, which deprived him of his proportionate equity interests in the properties; (2) tortiously interfered with his employment agreement with Charter, including a claim that he was wrongfully terminated; (3) converted his rights and interests in the limited partnerships, and in other Charter development projects; and (4) engaged in activities prohibited by the Georgia RICO Act (OCGA § 16-14-1 et seq.) giving rise

to the civil remedies available under OCGA § 16-14-6. Moore appeals from the order of the trial court granting partial summary judgment in favor of the defendants, and dismissing Moore's claims for tortious interference with the employment agreement, wrongful termination, conversion and RICO violations.

1. Moore claims the trial court erred by granting summary judgment against him on his claim that the defendants tortiously interfered with his rights in the employment agreement.

Moore contends that Barge and Wagener wrongfully induced Lesley to terminate his employment. It is undisputed that Moore's employment with Charter was terminable at will. Generally, claims for tortious termination of an employment contract are in two categories: "(1) where there is a definite term of employment and the corporation or employer would be liable for the breach of the employment contract . . . (2) where, even though the contract is terminable at will, a party with no authority to discharge the employee, being activated by an unlawful scheme or purpose to injure and damage him, maliciously and unlawfully persuades the employer to breach the contract with the employee." (Citations omitted.) *Campbell v. Carroll*, 121 Ga. App. 497, 499 (174 SE2d 375) (1970). Accordingly, a person whose employment contract is at will has no cause of action for wrongful termination or tortious interference with the contract against one who has an absolute right to terminate that employee. *Ga. Power Co. v. Busbin*, 242 Ga. 612, 613 (250 SE2d 442) (1978). However, even though the employment contract is at will, it is a valuable contract right, which may not be unlawfully interfered with by a third person without such authority. Id.; *Troy v. Interfinancial*, 171 Ga. App. 763, 766-767 (320 SE2d 872) (1984). Since the record shows that Lesley, as president of Charter, had absolute authority to terminate Moore, he cannot be held liable. Moore claims that, despite their ownership interests in Charter, Barge and Wagener were not officers in the corporation, nor did they otherwise have authority to terminate him, therefore they are properly considered as third persons who unlawfully interfered with his employment agreement. Pretermitting this claim, we find no evidence in the record to support Moore's claim that Barge or Wagener improperly induced Lesley to terminate him. Moore's speculation that they probably did so because of their ownership interest in Charter is not sufficient to create a factual issue. *Rhodes v. Levitz Furniture Co.*, 136 Ga. App. 514, 517-518 (221 SE2d 687) (1975).[1]

---

[1] Although we do not reach the issue, we note that even if there had been evidence that Barge and Wagener induced Lesley to discharge Moore, it is undisputed that Barge, Wagener and Lesley were the sole owners and shareholders of the corporation. Although the record does not establish to what extent Barge and Wagener actively directed or controlled Charter,

Moore also claims that under his employment agreement with Charter he had the right to receive certain equity interests in Charter-developed properties as part of his compensation. He contends the defendants tortiously interfered with this right in two ways: (1) the defendants failed to give him the interests to which he was entitled in certain properties developed by Charter, and (2) on properties in which he obtained a partnership interest, the defendants violated the partnership agreements by allocating partnership funds in a manner which deprived him of his proportionate equity interests in the properties.

Apart from the wrongful termination claim addressed above, these latter claims are under the terminable-at-will employment agreement for enforcement of the original terms of compensation for work performed under the agreement. See *E. D. Lacey Mills v. Keith*, 183 Ga. App. 357, 361 (359 SE2d 148) (1987). Moore brings these tortious interference claims against the individual defendants, one of whom was president of the corporation, and who together are the sole shareholders of the corporation which employed him. A claim for tortious interference with a contract may be brought only when the interference is done by one who is a stranger to the contract. *Jefferson-Pilot Communications Co. v. Phoenix City Broadcasting &c.*, 205 Ga. App. 57, 60 (421 SE2d 295) (1992); *Lake Tightsqueeze v. Chrysler First Financial &c. Corp.*, 210 Ga. App. 178 (435 SE2d 486) (1993). Accordingly, any action taken by the defendants on behalf of the corporation, Charter, which was obviously not a stranger to the employment contract with Moore, would be shielded by the corporate veil, in the absence of fraud or abuse of the corporate form authorizing Moore to pierce the veil in this case. *Caton*, supra at 205. Although shareholders or officers in a corporation enjoy a limited liability, they may be held liable individually for their own tortious or wrongful acts. *Zagoria v. DuBose Enterprises*, 163 Ga. App. 880, 886 (296 SE2d 353) (1982), rev'd on other grounds, 250 Ga. 844 (302 SE2d 674) (1983); *Wrigley v. Nottingham*, 111 Ga. App. 404, 406 (141 SE2d 859), rev'd in part on other grounds, *Nottingham v. Wrigley*, 221 Ga. 386 (144 SE2d 749) (1965). "One who is sued in his personal capacity, whether the alter ego, an officer or agent of a corporation, may not escape personal liability for his tortious misconduct damaging employees or third persons by hiding behind the corporate veil even in those situations where the corporation might also be a proper party to the action." *Wrigley*, 111 Ga. App. at 406.

---

it would seem apparent that as the sole owners acting together, Barge, Wagener and Lesley would have an absolute right to take action directing the corporation to discharge any at will employee. See *Campbell*, supra at 499; *Caton v. Haynes*, 260 Ga. 204, 205 (391 SE2d 107) (1990).

As part of his compensation under the employment agreement, Moore testified he received an equity interest in four Charter projects, which upon development became owned and managed by limited partnerships, in which he was one of the partners along with the defendants. He claims he was entitled to receive an equity interest in other projects, and that the defendants tortiously interfered with this right. In support of this claim, Moore alleges that the defendants were aware of his right to an interest in properties developed by Charter, and that they had no excuse or justification for interfering with this right. He alleges no specific facts to show how the defendants interfered. The only properties cited by Moore in which he contends he was improperly deprived an interest was a property in Birmingham and the Heritage Walk-Milledgeville property. The record shows that the Birmingham property was acquired by Charter, and, without being developed into a finished project, sold for a profit. Similarly, although preliminary negotiations had occurred on Heritage Walk, the property had not been acquired or developed prior to Moore's termination by Lesley. A dispute later arose over whether under Moore's employment agreement he was entitled to an interest in these types of properties, or whether his interest was limited to properties which were fully developed. These facts may support a claim for breach of the employment agreement, but they are not sufficient to show any tortious misconduct by the defendants. The only other support offered by Moore for this claim was his affidavit opposing summary judgment, which provided nothing more than the same general allegations, the affidavit of Moore's expert accountant, which produced evidence relating to misappropriation of funds in the limited partnerships in which Moore already had an equity interest, and a reference to the depositions of all three defendants, with the only specific reference being to the Birmingham property. There was insufficient evidence to create a question of fact on this claim. *Rhine v. Sanders*, 100 Ga. App. 68 (110 SE2d 128) (1959); *Johnson v. Auto/ Mend*, 183 Ga. App. 311 (359 SE2d 10) (1987); *Lawton v. Temple-Warren Ford*, 203 Ga. App. 222, 223-224 (416 SE2d 527) (1992).

Moore also sought to establish that the defendants tortiously interfered with his employment agreement with Charter by breaching the limited partnership agreements to which he and the defendants were parties. The evidence shows that after Charter had finished developing certain properties, Moore and the defendants formed limited partnerships under which Moore received an equity interest in the developed properties as required by his employment agreement with Charter, and the defendants divided up the remaining equity interest in the properties. The limited partnerships were created by separate agreements entered into by Moore and the defendants pursuant to the provisions of the Georgia Uniform Limited Partnership Act for

the express purpose of defining the proportionate equity interests of each partner in the developed properties, owning and maintaining the properties, and allocating the profits or losses generated by the properties according to the equity interests. The limited partnerships were effectively controlled by the defendants, with Moore receiving only about a ten percent equity interest in each of the partnerships. Moore does not contend in this claim that he was deprived of the initial equity interests in the properties to which he was entitled under the employment agreement. Rather, he claims that the defendants' wrongful actions in breach of the partnership agreements subsequently interfered with the employment agreement by causing the value of the equity interests to which he was entitled under the employment agreement to be impaired.

In support of this claim, Moore produced the affidavit of a certified public accountant, who examined financial records relating to the limited partnerships and averred that the records reflected: transactions showing the defendants received substantially larger cash distributions than they were entitled to under their proportionate interests as partners under one of the partnerships; partnership payment of fees to Barge and Wagener without documentation as to any services performed for the fees; partnership interest free loans to entities owned by the defendants; and partnership payment of Charter fees and administrative and other expenses without any documented agreement that the partnerships were liable for such payments. The affidavit concludes that Moore's proportionate interests in the properties under the partnership agreements were impaired by these actions.

"In order to recover for a third party's intentional interference with contractual relations, a plaintiff must show that damage to his rights or obligations under a contract proximately resulted from the third party's alleged interference." Carter v. Willowrun Condo. Assn., 179 Ga. App. 257, 259 (345 SE2d 924) (1986). Although Moore alleges that the defendants' wrongful breach of a separate agreement caused the alleged tortious interference with his employment contract, there is sufficient evidence of a direct causal connection between the defendants' alleged wrongful actions and the tortious interference claim to establish proximate cause in this case. This case is unlike those in which we have found that the defendant's alleged action did not directly interfere with the plaintiff's contract right. See First Mtg. Corp. v. Felker, 158 Ga. App. 14, 15-16 (279 SE2d 451) (1981); Wometco Theatres v. United Artists Corp., 53 Ga. App. 509, 513-515 (186 SE 572) (1936). Here, there is evidence that the alleged wrongful actions of the defendants in violation of the partnership agreements with Moore were a direct tortious interference with the compensation terms of Moore's employment contract with Charter. The evidence on

this claim was sufficient to create a question of fact as to whether the defendants, acting as third parties, interfered with Moore's right under the employment agreement with Charter to receive the full value of the equity interests in the properties to which he was entitled.[2]

2. We find no error in the trial court's grant of summary judgment in favor of the defendants on Moore's claim for conversion. Moore argues on appeal that the defendants converted cash distributions and the equity interests to which he was entitled under the partnership agreements. He also contends the defendants converted his right to an equity interest in other properties developed by Charter. As to the claim for conversion of Moore's equity interests in other properties developed by Charter, we have already determined that there is no evidence showing any tortious conduct by the defendants in this regard. Moreover, in seeking to recover losses for wrongful distribution of funds, and impairment of his equity interests, Moore does not plead for the recovery of specific money, or certain bills or coins, to which he had title, but instead seeks to recover a given quantity of money generally. Accordingly, he does not state a cause of action for conversion. *Cooke v. Bryant*, 103 Ga. 727, 730-731 (30 SE 435) (1898); *Hodgskin v. Markatron, Inc.*, 185 Ga. App. 750, 751 (365 SE2d 494) (1988).

3. Moore contends the trial court erroneously granted summary judgment in favor of the defendants on his claim for treble damages under the civil remedy provisions of the Georgia RICO Act. Moore claims that the alleged wrongful actions of the defendants were separate indictable incidences of theft forming a pattern of racketeering activity prohibited by the Georgia RICO Act.

The Georgia RICO Act (OCGA § 16-14-1 et seq.) was enacted by the General Assembly in response to its findings that "a severe problem is posed in this state by the increasing organization among certain criminal elements and the increasing extent to which criminal activities and funds acquired as a result of criminal activity are being directed to and against the legitimate economy of the state." OCGA § 16-14-2 (a). Accordingly, the General Assembly declared "that the intent of this chapter is to impose sanctions against this subversion of the economy by organized criminal elements and to provide compensation to private persons injured thereby. It is not the intent of the General Assembly that isolated incidents of misdemeanor conduct be prosecuted under this chapter but only an interrelated pattern of

---

[2] Although these allegations also form the basis for Moore's claim for damages for breach of the partnership agreements, a plaintiff may proceed up to point under both theories, but he is obviously not entitled to breach of contract and tort damages to the extent of a double recovery. *Maddox v. Brown*, 200 Ga. App. 492, 494-495 (408 SE2d 719) (1991).

criminal activity, the motive or effect of which is to derive pecuniary gain. This chapter shall be construed to further that intent." OCGA § 16-14-2 (b).

In describing available civil remedies under the Act, OCGA § 16-14-6 (c) provides that "[a]ny person who is injured by reason of any violation of Code Section 16-14-4 shall have a cause of action for three times the actual damages sustained. . . ." Under § 16-14-4 (a) "[i]t is unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money. Under § 16-14-4 (b) "[i]t is unlawful for any person employed by or associated with any enterprise to conduct or participate in, directly or indirectly, such enterprise through a pattern of racketeering activity." Subsection (c) of § 16-14-4 makes it unlawful "to conspire or endeavor" to violate subsections (a) or (b) of the statute. A "pattern of racketeering activity" is defined under OCGA § 16-14-3 (8) as "engaging in at least two incidents of racketeering activity that have the same or similar intents, results, accomplices, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated incidents. . . ." According to subsection 16-14-3 (9) (A) " '[r]acketeering activity' means to commit, to attempt to commit, or to solicit, coerce, or intimidate another person to commit any crime which is chargeable by indictment under the following laws of this state. . . ." The same subsection thereafter includes a list of "racketeering activity" offenses including those involving theft under OCGA § 16-8-1 et seq.

Applying the facts of this case to the civil remedy provisions of the Georgia RICO Act, and considering the purpose for which the Act was intended, we find no evidence to support Moore's claim that the defendants engaged in criminal activity amounting to separate indictable incidences of theft, which established a pattern of racketeering activity. See *Southern Cellular Telecom v. Banks*, 208 Ga. App. 286, 290 (431 SE2d 115) (1993); *Cobb v. Kennon Realty Svcs.*, 191 Ga. App. 740, 741-742 (382 SE2d 697) (1989). The trial court did not err in granting summary judgment in favor of the defendants on Moore's RICO claim.

*Judgment affirmed in part and reversed in part. Pope, C. J., and Birdsong, P. J., concur.*

DECIDED OCTOBER 14, 1993.

*Hart & McIntyre, John C. McIntyre, Jr.*, for appellant.
*Long, Aldridge & Norman, Phillip A. Bradley, Cathy L. Peter-*

*son,* for appellees.