A96A0533, A96A0534. BROWN et al. v. FREEDMAN;
and vice versa.
(474 SE2d 73)

BEASLEY, Chief Judge.

This suit arose from the sale of a home under power of sale and removal of personal property. Freedman and Halperin lent Moore $7,200 for home improvements on her residence and received a deed to secure debt on the house. The note called for monthly payments of $158.16, but Moore consistently paid at the rate of $200 per month for more than three years. Moore became ill, ceased payments, and died in November 1990. On January 15, 1991, an attorney for Freedman and Halperin sent a letter to Moore at the residence, demanding full payment of the principal, interest, and attorney fees, both as provided in the security deed and note and OCGA § 13-1-11 (a) (3). The demand letter set out the "principal balance due" but not the entire amount allegedly due.

Brown, Moore's elderly aunt and sole heir, lived across the street from Moore's house and eventually received the letter. Through intermediaries, she attempted to determine what amount would be necessary to pay the note, but neither Freedman nor the attorney would state it, each saying the other would have to give the information. Sale proceeded without notice to Brown and on March 5, 1991, Freedman purchased the house at auction for $5,610. After removing personal property, he resold the house for $31,400 on April 11. Brown retained an attorney to pursue the matter, but he failed to do so, and she is represented by different counsel in this suit.

Count 1 of the complaint alleged Freedman and Halperin breached, as to the security deed, the duty of good faith and fair dealing in performance and enforcement that accompanies every contract. See *Bldg. Materials Wholesale v. Reeves*, 209 Ga. App. 361, 363 (1) (433 SE2d 346) (1993). Count 2 alleged they did not fairly exercise their power of sale, OCGA § 23-2-114, and Count 3 alleged they converted Brown's personal property found inside the house, OCGA

§ 51-10-1; *Grant v. Newsome*, 201 Ga. App. 710 (1) (411 SE2d 796) (1991). Count 4 asserted that Halperin and Freedman committed violations of the Georgia Racketeer Influenced & Corrupt Organizations Act ("RICO"). OCGA § 16-14-1 et seq. Counts 5 and 6 asserted claims against Brown's former attorney. Freedman's motion for summary judgment was granted as to Count 4, the RICO claim, and denied as to Counts 1 through 3.

In Case No. A96A0533, Brown appeals from the grant of summary judgment on the RICO claim. In Case No. A96A0534, Freedman appeals from the denial of summary judgment as to the first two counts of the complaint but not as to Count 3, conversion of personal property. The other defendants are not party to this appeal. In both appeals, the evidence and all inferences and conclusions arising therefrom must be construed most favorably toward Brown, the party opposing the motion. *Garmon v. Warehouse Groceries Food Center*, 207 Ga. App. 89, 91 (1) (427 SE2d 308) (1993).

### Case No. A96A0534

1. Taking Freedman's appeal first, he contends he was entitled to summary judgment on Count 2, the OCGA § 23-2-114 claim for unfair exercise of the power of sale, because he sold the property as provided in the deed to secure debt and in the manner required by statute. The right of sale arises from a contract, but breach is a tort compensable at law. *Calhoun First Nat. Bank v. Dickens*, 264 Ga. 285 (1) (443 SE2d 837) (1994). See also, e.g., *Curl v. First Fed. Sav. &c.*, 243 Ga. 842, 843-844 (2) (257 SE2d 264) (1979); *Decatur Investments Co. v. McWilliams*, 162 Ga. App. 181, 182 (2) (290 SE2d 526) (1982); 20A EGL, Mortgages and Bonds for Title, p. 342, § 69. A claim for wrongful exercise of a power of sale under OCGA § 23-2-114 can arise when the creditor has no legal right to foreclose. *Sears Mtg. Corp. v. Leeds Bldg. Products*, 219 Ga. App. 349, 351 (2) (464 SE2d 907) (1995) (non-precedential as to other holdings).[1] Although Brown responds that Freedman could not proceed because the note was never in default before foreclosure, that is incorrect. It is undisputed that no payments had been made for some months preceding the acceleration letter, and the note clearly calls for the debt to be paid in monthly installments.

Brown asserts that the earlier payments in excess of $158.16 per month were not properly posted to the account because payments in

---

[1] *Sears Mtg. Corp.* refers to the action as one for wrongful foreclosure, but in that case, as here, the sale of the property was under the power of sale in a security deed, not the foreclosure of a mortgage. See OCGA §§ 44-14-49; 44-14-60. Both instruments are encompassed under OCGA § 23-2-114.

excess of the stated monthly charge were not applied to principal. OCGA § 7-4-17; *First Nat. Bank of Gainesville v. Appalachian Indus.*, 146 Ga. App. 630, 632 (2) (247 SE2d 422) (1978). When payments were missed, Freedman calculated the "extra" amount that had been paid and began drawing against it at $158.16 per month and did not pursue sale until the overages had been exhausted. While this method of allocating excess payments was not in accordance with the statute and affected the amount of interest and principal remaining on the debt and the amount due on default, neither the excess payments nor the method of posting them to the account altered the debtor's obligation under the note to make monthly payments even if the principal was reduced. When payments were not made, the note was in default. Brown points to nothing in the note, deed, or OCGA § 7-4-17 that would relieve the debtor of the obligation to pay monthly installments, which would include interest, and we find nothing to support such an interpretation.

A claim for wrongful exercise of a power of sale can be asserted even though a debt is in default. "[W]hen a power of sale is exercised ' "[a]ll that is required of [the foreclosing party] is to advertise and sell the property according to the terms of the instrument, and that the sale be conducted in good faith." [Cits.]' [Cit.]" *Kennedy v. Gwinnett Commercial Bank*, 155 Ga. App. 327, 330 (1) (270 SE2d 867) (1980). "Good faith" in conducting the sale is not necessarily limited to the provisions of the deed. A power of sale " 'simply evidences an agreement between the parties that the (mortgagee) shall be relieved from the necessity of resorting to a foreclosure at law or in equity. . . . However, even though the power of sale is conferred upon the grantee for the purpose of facilitating his collection of the amount of the underlying debt which is secured by the property, the power must be exercised fairly. [OCGA § 23-2-114.]" Id. at 328-329 (1). A "breach of this duty to conduct the sale 'fairly' gives rise to a claim for damages to the injured holder of the equity of redemption." Id. at 329 (1); accord *Calhoun First Nat. Bank v. Dickens*, supra at 285-286 (1).

Brown contends, in part, that Freedman's purchase of the property at auction for less than one-fifth the amount he sold it for shortly thereafter is sufficient to conclude that he breached his duty to conduct the sale fairly. However, price alone is not sufficient; a claim for damages may lie " 'only when the price realized is grossly inadequate *and* the sale is accompanied by either fraud, mistake, misapprehension, surprise or other circumstances which might authorize a finding that such circumstances contributed to bringing about the inadequacy of price that' the foreclosing party has breached his duty under the power of sale. [Cit.]" (Emphasis supplied.) *Kennedy*, supra at 331 (1). It is the "circumstances," in con-

junction with the price, that can lead to a recovery.

The January 15, 1991, letter of Freedman's attorney set forth a "Principal Balance Due" of $4,475.25, but also stated that tender of payment would have to be for that amount and "interest to the date of payment." It also referred to "legal and other expenses . . . that must be paid by [debtor]" regardless of when the debt was paid. Although there is no evidence Brown made any "tender" that was rejected, there is evidence that she attempted through intermediaries to determine how much was owed so she could pay it, but neither Freedman nor his attorney would tell her, each saying the other would have to do so. A jury could conclude that Freedman knew that Brown, the person now responsible for the encumbrance, would pay the debt, but that Freedman deliberately kept that information from her. Evidence that Freedman took personal property from the house after the sale could also support a finding that Freedman's primary interest in exercising the power of sale was not to protect his security but to gain as much as possible financially regardless of Brown's equity of redemption or property rights. Such a fact, if found, coupled with Freedman's purchase of the property at a price less than a fifth of what he received for it a month later, could support a finding that he exercised the power of sale unfairly.

Freedman notes that Brown did not appear at the sale, but the record is devoid of any notice given to her of the date or place or of any indication she had actual notice. Compare *Kennedy*, supra at 332 (2). Failure to give it knowing of her interest in the property is a circumstance that could also support a finding that Freedman did not wish Brown to appear and bid, which might prevent him from buying property worth more than $30,000 for only $5,610. Without even discussing other evidence, the evidence described above does not preclude a finding that Freedman's conduct constituted an unfair exercise of the power of sale. The court did not err in denying summary judgment on Count 2.

2. Freedman also contends he should have been granted summary judgment on Count 1, the claim for breach of the duty of good faith and fair dealing in the performance and enforcement of obligations and rights in the deed to secure debt. This implied duty "requires both parties to a contract to perform their promises and provide such cooperation as is required for the other party's performance. [Cit.]" *Ihesiaba v. Pelletier*, 214 Ga. App. 721, 724 (2) (448 SE2d 920) (1994). It is a jury question whether Freedman breached this duty in the manner in which he posted Moore's prepayments to the account. It is also a jury question whether his actions concerning Brown's attempts to redeem the property showed a lack of good faith in performance of the security deed contract. The court did not err in denying summary judgment on this count.

## Case No. A96A0533

3. Brown contends the court erred in granting summary judgment to defendant Freedman on the RICO claim. A RICO violation, OCGA § 16-14-4, and any consequent recovery through OCGA § 16-14-6 (c), requires that Brown show an injury by a pattern of racketeering activity, *State of Ga. v. Shearson Lehman Bros.*, 188 Ga. App. 120, 121 (2) (372 SE2d 276) (1988). A pattern requires at least two interrelated predicate offenses. OCGA § 16-14-3 (8).

In her complaint, Brown does not expressly allege which of the acts she recites in her narrative of events constitute predicate criminal acts for RICO purposes. In her brief in this Court, and in her response to Freedman's motion below, she alleges theft by conversion, OCGA § 16-8-4, theft by deception, OCGA § 16-8-3, and mail fraud, 18 USC § 1341, which constitute RICO predicate acts. See OCGA §§ 16-14-3 (9) (A) (ix); 16-14-3 (9) (A) (xxix). Although she does not specify all the acts which she alleges constitute these crimes, at this point she is not required to. Freedman may move for a more definite statement if one is necessary. *Maddox v. Southern Engineering Co.*, 216 Ga. App. 6, 8 (2) (453 SE2d 70) (1995).

We need not address all potential predicate acts for the purposes of this appeal. Brown must show evidence only of two predicate acts. Id. at 7 (2). She alleges injuries from theft by conversion of her personal property inside the house. Summary judgment was denied Freedman on the complaint's separate conversion count, he does not appeal that decision nor argue that conversion as a predicate act cannot be shown, and there is evidence of conversion of the belongings in the house.

She also argues Freedman's actions in response to her attempts to find out how much money was owed on the property constituted theft by deception so as to deprive her of her property by preventing her "from acquiring information pertinent to the disposition of the property." OCGA § 16-8-3 (b) (3). As discussed in Division 1, a jury could conclude that Freedman deliberately kept the correct amount of the debt from Brown. Freedman has not precluded a jury's finding that his actions in this regard constituted the crime of theft by deception.

Freedman asserts that even if two predicate acts are shown, a single transaction does not constitute a pattern of racketeering activity, and the only transaction shown here is the sale at auction of the property. *Raines v. State*, 219 Ga. App. 893, 894 (1) (467 SE2d 217) (1996), cert. denied; *Cobb v. Kennon Realty Svcs.*, 191 Ga. App. 740, 741-742 (2) (382 SE2d 697) (1989). The two predicate acts described are not part of one transaction; improper accounting on the note is separate from conversion of personal property after the sale. The sale

under power does not unite them into a single transaction, but rather only serves as the link required for them to be considered a pattern of racketeering activity. OCGA § 16-14-3 (8). The court erred in granting summary judgment as to the RICO claim in Count 4.

*Judgment reversed in Case No. A96A0533. Judgment affirmed in Case No. A96A0534. Birdsong, P. J., and Blackburn, J., concur.*

DECIDED JUNE 25, 1996 —
RECONSIDERATIONS DENIED JULY 11, 1996.

*Tony Center*, for appellants.
*Rubin & Wildau, Martin H. Rubin, Robert C. Port*, for appellee.