A96A1014. MULLEN v. NEZHAT et al.
(477 SE2d 417)

ANDREWS, Judge.

Mary S. Mullen appeals from the grant of partial summary judgment to Dr. C. Nezhat, Dr. F. Nezhat, and Atlanta Center for Endocrinology, Inc. on her RICO claims arising from her surgery on December 16, 1991, at Northside Hospital.

Mullen's complaint, as amended, also named Dr. Earl Pen-

nington, and Northside Hospital, Inc. as defendants. Numerous causes of action were alleged against the doctors and hospital, including malpractice, battery, fraud, and the RICO claim.

1. Viewing the evidence presented under the standard of *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991), it was that C. and F. Nezhat were obstetricians/gynecologists who performed laparoscopic surgery for endometriosis and other problems. Mullen had been suffering from severe pelvic pain and was referred to Drs. Nezhat by her gynecologist in California, where she resided. In December 1988, she underwent surgery by video laseroscopy by Dr. C. Nezhat for treatment of endometriosis, as well as rectal and colon adhesions and ovarian cysts. This surgery was successfully completed.

Due to recurring problems, however, Mullen returned to Drs. Nezhat for further treatment in December 1991. She was admitted to Northside Hospital on December 17 for her surgery on December 18, 1991. This surgery is the basis for the present litigation.

As part of the admission process, Mullen signed a Consent To Surgical Or Diagnostic Procedures And Waiver Of Right To Receive Information In Connection Therewith. The procedures to be performed or possibly performed were listed therein as "video laseroscopy, hysteroscopy, and any other procedure deemed necessary, *possible bowel resection*, possible laparotomy, possible colostomy." (Emphasis supplied.) Subsection B of that document stated that "I acknowledge and understand and duly evidence in writing by executing this form that under Georgia law I am entitled to receive the following information relative to the procedure(s) described in paragraph (A): 1. A diagnosis of the condition requiring the procedure(s): 2. The nature and purpose of the procedure(s): 3. The material risks of the procedure(s): 4. The likelihood of success of the procedure(s): 5. The practical alternatives to such procedure(s): and 6. The prognosis if the procedure(s) is (are) rejected."

The final paragraph stated that the form had been explained to Mullen, that she understood it, consented to the surgery, and "I fully and completely waive the right to be informed of the information specified in paragraph (B) and request that such information not be disclosed."

Mullen was operated on under general anesthesia on December 18, 1991, from 7:30 a.m. to 11:00 a.m. As part of the surgery, her bowel was mobilized and prolapsed through her rectum for examination for endometriosis and a portion of tissue removed. The rest of the bowel was then sutured and reinserted. Mullen's recovery was normal until approximately 7:00 p.m. when she went to the bathroom and a portion of the rectum prolapsed. Dr. Pennington reinserted the bowel, and Mullen was discharged on December 23, 1991,

no further problems with prolapse having been observed or reported. While this surgery is the basis for this litigation, Mullen underwent an additional surgery by Dr. C. Nezhat in July 1992. She contends that, while she was told the 1991 bowel resection was necessary because of endometrioma, or cancer, and that it would be done only if the endometrioma was deep in the bowel wall, in fact, very few endometriosis cells were found by the pathologist, and there was no evidence of deeply invasive endometrioma.

2. The complaint was originally filed in December 1993 and repeatedly amended,[1] both before and after the defendants filed the motion for partial summary judgment at issue here and the hearing was held. Mullen's second amended complaint was filed on July 22, 1994, and contained as Count 8 allegations of violation of OCGA § 16-14-4, RICO, against Dr. C. and Dr. F. Nezhat. The predicate acts are alleged as failure to obtain informed consent, supplying false data to medical journals, and excessive and improper billing sent to insurance companies or patients for the allegedly "experimental surgery."

On March 6, 1995, plaintiff's third amendment was filed, alleging Count 9 to the complaint, another RICO charge against both Nezhats and Dr. Pennington. This count alleged that the doctors failed to obtain "valid informed consent . . ., by fraudulently misrepresenting the true nature of their experimental surgery, [and] by repetitively performing non-indicated, unnecessary surgery . . ." on Mullen and other patients, thereby "deliberately and maliciously causing bodily harm" amounting to aggravated battery. On March 20, 1995, Mullen filed her fourth amendment, adding to Count 9 the allegations that the Nezhats had engaged in experimental and non-consensual medical treatment by implanting Estradiol pellets into "hundreds if not thousands of women without their knowledge that this hormonal implant was not approved." It was again alleged that this experimental treatment was improperly billed to insurance companies as other treatment, constituting mail and wire fraud as predicates under OCGA § 16-14-3.

OCGA § 16-14-4 prohibits any person, through a pattern of racketeering activity, from acquiring or maintaining any enterprise, real or personal property, including money. " 'Racketeering activity' means to commit, to attempt to commit, . . . any crime which is

---

[1] Although appellees argue that this Court should not consider the amendments filed after the hearing on their motion for summary judgment, since there is no pretrial order filed in the case, these amendments should be considered. *Modern Roofing &c. v. Owen*, 174 Ga. App. 875, 876 (332 SE2d 14) (1985); *Haskins v. Jones*, 142 Ga. App. 153, 154 (3) (235 SE2d 630) (1977); *Rushing v. Ellis*, 124 Ga. App. 621, 623 (1) (184 SE2d 667) (1971); see *Spafford v. Maseroni*, 186 Ga. App. 290 (367 SE2d 102) (1988).

chargeable by indictment . . ." as listed in numerous specified statutes, including OCGA § 16-5-24, aggravated battery. OCGA § 16-14-3 (9) (A).

As set out above, the two required predicate acts initially alleged by Mullen were aggravated battery committed against her and unnamed "other patients." OCGA § 16-5-24 (a) provides that a person commits aggravated battery "when he or she maliciously causes bodily harm to another by depriving him or her of a member of his or her body, by rendering a member of his or her body useless, or by seriously disfiguring his or her body or a member thereof."

In essence, Mullen contends that the scienter (knowledge which can be proven by showing consent to the touching was obtained by fraud) which is needed to prove a civil tort claim based on battery, *Smith v. Wilfong*, 218 Ga. App. 503, 507 (2) (462 SE2d 163) (1995), is equivalent to the mens rea (general criminal intent) needed to prove a criminal charge under OCGA § 16-5-24. That statute, however, requires malicious intent to cause bodily harm, see *Mullen v. State*, 51 Ga. App. 385, 387 (180 SE 521) (1935), not fraudulently misrepresenting the type of surgery to be done, the conditions under which it would be done, or the fact that such surgery is experimental. As alleged, the complaint does not indicate the doctors' malicious intent to commit bodily harm, but intent to profit financially from conducting experimental medical treatment. As alleged in the complaint, it was to the benefit of the doctors that such surgery be seen as "successful," thereby negating malicious intent to injure the patients.

Here, Mullen does not dispute that she signed the consent form, although she apparently did not read it fully and did not mean to waive her right to information about the surgery. The consent form specifies that a bowel resection was one of the contemplated procedures.

These circumstances do not amount to aggravated battery because they do not allege acts indictable under the criminal statute. *Cobb County v. Jones Group P.L.C.*, 218 Ga. App. 149, 155 (8) (460 SE2d 516) (1995); *Avery v. Chrysler Motors Corp.*, 214 Ga. App. 602, 603 (1) (448 SE2d 737) (1994); see *State v. Burrell*, 189 Ga. App. 812, 813 (377 SE2d 898) (1989).

Therefore, the grant of summary judgment to appellees on the RICO allegations premised on aggravated battery as predicate acts was proper.

3. As to the mail or wire fraud allegations, the doctors argue that violations of the federal mail and wire fraud statutes cannot be predicate acts under Georgia's RICO statute. This is not the case. *Brown v. Freedman*, 222 Ga. App. 213 (474 SE2d 73) (1996); *Reaugh v. Inner Harbour Hosp., Ltd.*, 214 Ga. App. 259, 264 (5) (447 SE2d 617)

(1994); *Dover v. State*, 192 Ga. App. 429 (385 SE2d 417) (1989); see *State of Ga. v. Dairymen, Inc.*, 813 FSupp. 1580, 1585 (10) (S.D. Ga. 1991).

These statutes require that a person, "having devised . . . any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, . . ." use the mails or wire communication for the purpose of executing the scheme. 18 USC §§ 1341, 1343; *Interagency v. Danco Financial Corp.*, 203 Ga. App. 418, 426 (3) (417 SE2d 46) (1992).

The trial court's order found that Mullen's allegations of fraud were inadequately pled and, since the defendants had pierced Mullen's pleadings in this regard on their motion for summary judgment, this defect could not be corrected by a motion for more definite statement. We agree. Having reviewed the record, we find that the doctors have pierced Mullen's allegations of mail and wire fraud, making it incumbent upon her to come forward with evidence of two predicate acts. *Lau's Corp.*, supra; *Brown v. Freedman*, supra. In response, Mullen relied below and continues to rely here solely on the allegations of her complaint.

Even considering these bare allegations, they fail for other reasons. Although Mullen alleges that the doctors submitted fraudulent billing statements to insurers and patients, the only patient specified is herself and no specific insurers are named. That Mullen may suspect that these acts were perpetrated against others is not sufficient to create a factual issue at this juncture on the required two predicate acts. *Moore v. Barge*, 210 Ga. App. 552, 553 (1) (436 SE2d 746) (1993); *Cobb v. Kennon Realty Svcs.*, 191 Ga. App. 740, 741 (2) (382 SE2d 697) (1989); see *Green v. Sams*, 209 Ga. App. 491, 498 (1) (433 SE2d 678) (1993).

To the extent that Mullen seeks to rely upon her allegations of "medical journal fraud," i.e., publishing false data on their experimental surgery in medical journals in order to entice patients and referrals from other doctors, as predicate acts, this also fails. First, these allegations were stricken from the complaint below on September 6, before filing of the notice of appeal on September 22, and that order is not addressed by this appeal. Additionally, Mullen does not allege that she was induced to undergo surgery by what she read in a medical journal, but that other patients might have been or doctors might have been induced to make referrals. Therefore, as to these acts, she has no standing to raise this issue. See *Sedima v. Imrex Co.*, 473 U. S. 479, 496 (105 SC 3275, 87 LE2d 346) (1985); *Morast v. Lance*, 631 FSupp. 474, 480-482 (8), (9), (10) (N.D. Ga. 1986), aff'd, 807 F2d 926; *Maddox v. Southern Engineering Co.*, 216 Ga. App. 6, 7 (1) (453 SE2d 70) (1994).

Finally, failure to obtain informed consent, assuming that

occurred here, could not be a "predicate act" for purposes of the civil RICO claim. Such a violation, according to the plain language of the statute, "shall not constitute a separate cause of action but may give rise to an action for medical malpractice as defined in Code Section 9-3-70." OCGA § 31-9-6.1 (d). Therefore, such a failure is not the type of conduct intended to be deterred by the civil RICO provisions. See *Sevcech v. Ingles Markets*, 222 Ga. App. 221 (474 SE2d 4) (1996).

4. Mullen also enumerates as error the trial court's denial of her motion to vacate all prior orders issued by the magistrate judge, sitting by designation pursuant to OCGA § 15-1-9.1 for the superior court judge, after he recused himself from the case.

We do not have jurisdiction to consider this issue. The notice of appeal from the grant of partial summary judgment to the doctors was filed September 22, 1995. At a hearing conducted on September 15, 1995, the magistrate announced that he was recusing himself because a former client who had been sued by the doctors' professional corporation over a bill had just recontacted him. Mullen then filed her motion to vacate all prior orders entered by the magistrate, which was denied by order entered September 26, 1995. On October 16, a "Supplement" to the notice of appeal was filed to include this order in the appeal, pursuant to *Southeast Ceramics v. Klem*, 246 Ga. 294 (271 SE2d 199) (1980).

That case, however, deals only with orders entered prior to filing the notice of appeal, not subsequent thereto. Such subsequent orders are not properly before the appellate court and cannot be added by amending the notice of appeal. *Costanzo v. Jones*, 200 Ga. App. 806, 811 (3) (409 SE2d 686) (1991); *Gilbert v. Edmondson*, 193 Ga. App. 593, 594 (3) (388 SE2d 713) (1989).

*Judgment affirmed. Smith, J., concurs. Pope, P. J., concurs specially.*

POPE, Presiding Judge, concurring specially.

I concur specially with Divisions 2 and 3. Although I agree that summary judgment was properly granted on Mullen's RICO claim, I differ from the majority's analysis in reaching that conclusion.

The superior court granted summary judgment on Mullen's RICO claim, finding that it lacked the requisite predicate acts for a RICO claim. OCGA § 16-14-3 (8) defines "pattern of racketeering activity" for purposes of a RICO claim: as "engaging in at least two incidents of racketeering activity that have the same or similar intents, results, accomplices, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated incidents. . . ." See generally *Brown v. Freedman*, 222 Ga. App. 213 (474 SE2d 73) (1996). The superior court found mail fraud, wire fraud and battery were the predicate acts for Mullen's com-

plaint, and that each of these claims failed.

The court concluded that Mullen's claims for mail and wire fraud failed because she did not present evidence to support her allegations. The court stated: "Plaintiff is required to show some evidence to support her allegations. Nonetheless, in the course of many months of litigation and upon oral hearing on her motion for summary judgment, Plaintiff has failed to come forward with any letters that would support her claims of mail fraud, any telephone bills showing long distance calls, any dates on which these letters and calls were received, or anything else that would support a genuine issue of material fact as to whether Defendants Farr and Camran engaged in the mail fraud or wire fraud as alleged." I agree with the court's conclusion in this regard. See generally *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

Thus, if Mullen's RICO claim was to survive the motion for summary judgment, it must do so based on her claims of battery for the predicate acts. I conclude that the battery claim — and thus the RICO claim fails — because there was no evidence of *two* predicate acts of battery. Assuming arguendo that the December 18, 1991 surgery serves as one predicate act, the pleadings do not clearly allege a separate battery against Mullen. Although the pleadings *do* allege that batteries were committed against numerous other patients, Mullen presented no evidence regarding these vague allegations, and the claim must fail under OCGA § 16-14-3 (8).

Despite my conclusion that summary judgment was proper, I disagree with the majority's conclusion that the battery allegations failed because the complaint failed to properly allege the doctors' malicious intent to commit bodily harm, as necessary for an aggravated battery claim under RICO. The majority concludes that Mullen's claim could not survive because she essentially alleged the scienter necessary to a civil tort claim, not the general criminal intent necessary to prove a criminal charge under OCGA § 16-5-24. To the extent that the majority precludes *all* civil battery from serving as predicate acts for RICO, I disagree.

Although sometimes the intent which forms the basis for a civil suit may not rise to the level necessary to prove a criminal charge, see *Avery v. Chrysler Motors Corp.*, 214 Ga. App. 602 (448 SE2d 737) (1994), in some instances of civil battery the intent may rise to the requisite level of criminality. OCGA § 16-5-24 provides that "[a] person commits the offense of aggravated battery when he or she *maliciously causes bodily harm* to another. . . ." In a civil action for battery, the intent to cause actual physical harm to another is not absolutely essential to the viability of a civil action for battery. See OCGA § 51-1-13; *Hendricks v. Southern Bell Tel. &c. Co.*, 193 Ga. App. 264 (1) (387 SE2d 593) (1989). Nevertheless, when a civil

defendant commits a battery under sufficiently egregious circumstances, the act may rise to the level of an aggravated battery. As in batteries in which punitive damages may be sought: "if in addition to intending to make contact of either a harmful or an insulting or provoking nature . . . [the defendant] also acted wantonly, wilfully or *maliciously,*" *Hendricks*, 193 Ga. App. at 266, a criminal action may lie. In other words, although a civil battery will not always rise to the level of an aggravated battery, in some instances such an act *may* rise to the requisite level of criminality.

DECIDED OCTOBER 22, 1996.

*Dickinson, Noel & Mixson, Michael K. Mixson*, for appellant.
*Sullivan, Hall, Booth & Smith, Henry D. Green, Jr., Walbert & Mathis, David F. Walbert*, for appellees.