[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-11015
Non-Argument Calendar
_____

D.C. Docket No. 6:11-cv-00019-JRH-GRS


CYNTHIA LYNN, Individually, and in
her capacity as executrix of the estate of
Mrs. Lois Findley Lynn

                                                    Plaintiff - Appellant,


versus


US BANK NATIONAL ASSOCIATION,
As Custodian/Trustee, assignee of Lend Lease
Agri-Business, Inc.

                                                    Defendant - Appellee.


_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(October 2, 2013)

Before MARCUS, JORDAN, and KRAVITCH, Circuit Judges.

PER CURIAM:

Cynthia Lynn, on behalf of herself and in her capacity as the executrix of her mother's estate, brought suit against US Bank National Association (US Bank), the Federal Agricultural Mortgage Corporation (Farmer Mac), and others for certain alleged deficiencies in a foreclosure sale of a tract of agricultural land in Tatnall County, Georgia.  The district court dismissed Ms. Lynn's complaint under Rule 12(b)(6) and she timely appealed.  We affirm.  The allegations in the complaint, taken as true, fail to state a claim upon which relief may be granted.

## I.

Ms. Lynn's mother, Lois Lynn, owned a tract of agricultural land that served as collateral for a promissory note.  Additionally, Ms. Lynn encumbered her own property to help secure her mother's loan.  In failing health, Lois Lynn declared bankruptcy in 2008 and, pursuant to her approved bankruptcy plan, was required to make annual payments toward satisfying the note.  In 2010, Lois Lynn missed her annual payment, and was informed of the default in May of 2010.  A month later, in June of 2010, the bankruptcy stay was lifted at the request of the secured creditor.  At roughly the same time, Lois Lynn passed away.

Ms. Lynn was appointed temporary administratrix of her mother's estate on September 28, 2010.  A foreclosure sale of the entire tract that served as collateral was advertised for, and conducted on November 2, 2010.  The property was sold to

2

Wallace Jarriel for $663,000, or $974.89 per acre (roughly a third of its fair market value). Weeks later, Mr. Jarriel conveyed a large portion of the property to Alan Sikes for $311,700, or $975 per acre.

Ms. Lynn does not claim any defect with respect to the notice for the foreclosure sale provided by US Bank, the bank processing the foreclosure. Instead, she alleged that US Bank breached its duty of good faith at the foreclosure sale. According to Ms. Lynn, the sale price was grossly inadequate, and certain circumstances concomitant with the sale contributed to that inadequate price.

Ms. Lynn also alleged that US Bank was not even legally entitled to conduct the foreclosure sale. The Note was issued by Lend Lease Agri-Business ("Lend Lease"), who then sold the Note to Farmer Mac. Ms. Lynn cited to a Custodial Agreement between US Bank and Farmer Mac whereby the former accepted certain custodial/maintenance duties for the documentation of Farmer Mac's loans, including Lois Lynn's Note. *See* Custodial Agreement, D.E. 5-3. Pursuant to that agreement, Lend Lease assigned Lois Lynn's Note and Security Deed to US Bank, specifically indicating US Bank's role "as Custodian/Trustee." Assignment of Security Deed, D.E. 5-2 at 22-28. Although the Custodial Agreement does not explicitly grant US Bank the power of conducting a sale under any of the instruments in its custody, the assignment of the Security Deed to US

3

Bank does not contain any language otherwise limiting its authority or powers under the deed.

## II.

On appeal, we exercise plenary review of a district court's order dismissing a complaint under Rule 12(b)(6). *See Lopez v. First Union Nat'l Bank of Fla.*, 129 F.3d 1186, 1189 (11th Cir. 1997). All facts set forth in the complaint "are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto." *GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The factual allegations must state a claim that is not just conceivable, but plausible on its face. *Id.* at 680.

## III.

On appeal, Ms. Lynn argues that the district court should have concluded that US Bank was not legally authorized to conduct the foreclosure sale. Ms. Lynn believes that the powers delegated to US Bank under the Security Deed were limited by the terms of the Custodial Agreement. The Custodial Agreement, says Ms. Lynn, did not grant US Bank the right to execute a foreclosure sale on collateral for any loans under its custodial possession. Because the assignment of

4

the Security Deed to US Bank makes explicit reference of US Bank as a "Custodian/Trustee," Ms. Lynn argues that the limitations defined by the Custodial Agreement must be read into the Security Deed. The district court disagreed, construing the terms of "the Security Deed [as] . . . not forbid[ding] an assignee designated as 'Custodian/Trustee' from exercising the power of sale." D.E. 53 at 15.

As Ms. Lynn points out, *see* Appellant's Brief at 10, the Custodial Agreement states that US Bank "shall not have duties or obligations other than those specifically set forth" in the agreement. D.E. 5-3 at 33. But this provision merely limits the affirmative duties and obligations US Bank owes to Farmer Mac; it does not limit US Bank's ability to otherwise act. Specifically, the agreement provides that US Bank "agrees to cooperate with Farmer Mac and the Central Servicer to enable Central Servicer to perform its duties under the Servicing Agreement. Without limiting the foregoing, [US Bank] **agrees to execute such instruments, agreements or such other documents** as may be reasonably requested in writing by Farmer Mac or Central Servicer in connection with the assignment or recordation of documents relating to any Mortgage Loans subject to this Agreement." D.E. 5-3 at 34 (emphasis added).

Ms. Lynn has never averred that US Bank's actions were conducted in contravention of the wishes of Farmer Mac or Lend Lease, the "Central Servicer"

5

of her mother's promissory note.   Because the terms of the Custodial Agreement do not prohibit US Bank from exercising the power of sale (and, in fact, require such action if so desired by Farmer Mac), we need not opine on whether the unambiguous provisions of a properly executed and filed Security Deed ought to be subject to the terms of such an extrinsic agreement.  Even if such terms could constrain the rights under a security deed, they would not do so in this case. Therefore, we find no error in the district court's refusal to limit US Bank's rights under the Security Deed.

Ms. Lynn's related argument, that the district court improperly construed O.C.G.A. § 23-2-114 to not require the terms of an extrinsic agreement to curtail the rights granted in a Security Deed, is not persuasive. The statute in question provides that "[u]nless the instrument creating the power specifically provides to the contrary . . . an assignee thereof . . . may exercise any power therein contained." O.C.G.A. § 23-2-114.  The district court referenced the statute when it found that "the Security Deed . . . does not forbid an assignee designated as 'Custodian/Trustee' from exercising the power of sale. . . . And per the plain language of O.C.G.A. § 23-2-114, a transfer absent such restriction conveys the power of sale." D.E. 53 at 15.  Because an assignment of all rights to the Security Deed was permitted under the Custodial Agreement, and Ms. Lynn did not suggest that such complete assignment was not anticipated, contemplated, or desired by

6

Farmer Mac or Lend Lease, Ms. Lynn has failed to show that US Bank was not assigned full rights under the Security Deed.  Therefore, Ms. Lynn's alternative construction of § 23-2-114, even if valid, would be unavailing.

## IV.

Ms. Lynn also asserts that US Bank breached its duty to conduct the foreclosure sale in good faith.  A plaintiff asserting a claim for wrongful foreclosure in Georgia must "establish a legal duty owed to it by the foreclosing party, a breach of that duty, a causal connection between the breach of that duty and the injury it sustained, and damages." *Heritage Creek Dev. Corp. v. Colonial Bank*, 601 S.E.2d 842, 844 (Ga. Ct. App. 2004).  The duty of the foreclosing party is limited "to advertise and sell the property according to the terms of the instrument, and that the sale be conducted in good faith." *Giordano v. Stubbs*, 184 S.E.2d 165, 168 (Ga. 1971).  A breach of this duty to conduct the sale in good faith may arise where "the price realized is grossly inadequate and the sale is accompanied by either fraud, mistake, misapprehension, surprise or other circumstances which might authorize a finding that such circumstances contributed to bringing about the inadequacy of price." *Id.* at 168-169.

## A.

7

First, Ms. Lynn contends that the foreclosure sale was sullied by collusive activity between Messrs. Jarriel and Sikes, which led to a grossly inadequate sale price. Ms. Lynn contends that the actual foreclosure sale price, roughly $975 per acre, less than one-third of the then fair market value for the property, was grossly inadequate. The district court, however, noted that while a sale price of less than 20% of fair market value may generally be considered inadequate under Georgia law, *see Brown v. Freedman*, 474 S.E.2d 73, 76 (Ga. Ct. App. 1996), "prices garnering 25% or more of fair market value are adequate." D.E. 53 at 21. The district court relied on non-binding, non-Georgia case law to buttress this latter position, a determination questioned by Ms. Lynn in her brief. But even if we agreed with Ms. Lynn on this point, her complaint would still lack sufficient basis to support the second prong of the breach of duty claim, i.e., that the sale was accompanied by certain circumstances influencing the supposedly inadequate sale price.

Ms. Lynn alleged that US Bank's liability arose from "selling the Property to a buyer who was colluding with another prospective buyer to artificially lower the Foreclosure sales price." First Amended Complaint, D.E. 25 at ¶ 75. We agree with the district court that "even if true, allegations that Jarriel and Sikes colluded to reduce the sales price cannot support a claim for breach against US Bank. Plaintiff has not alleged that US Bank joined in any collusive conduct, nor has she

8

cited any law to support the idea that a foreclosing party's duty of good faith is so broad as to require avoidance of secret buyer machinations." D.E. 53 at 19.

Ms. Lynn cites to *Brown*, 474 S.E.2d at 76, to support her curious assertion that US Bank's liability encompasses any putative collusion affecting the sale price, regardless of US Bank's involvement in or knowledge of such collusion. *See* Appellant's Brief at 29. We do not think, however, that *Brown* postulates such unbounded liability. *See* 474 S.E.2d at 76.

*Brown* involved the purchase of a decedent-debtor's foreclosed property by the secured creditor. The Georgia Court of Appeals found the fact that the creditor later sold the house for five times the foreclosure sale price, and that the creditor withheld material information from the debtor's heir, who had hoped to repay the outstanding debt, could be construed by a jury as an unfair exercise of the power of sale. *Id.* The untoward circumstances influencing the foreclosure sale price in *Brown* were directly committed by a creditor-seller who also happened to be the buyer. *Id. Brown*, in our view, endorses the district court's conclusion that there must be some connection between the seller's conduct and the grossly inadequate sale price to establish liability for a breach of the duty to conduct the sale in good faith. *See* D.E. 53 at 19. *See also Heritage Creek*, 601 S.E.2d at 845 (plaintiff "did not produce even a scintilla of evidence which shows any wrongdoing by the bank,

9

or that any act or omission by the bank caused [plaintiff] to lose its equity in the eight lots which were sold in foreclosure").

Additionally, Ms. Lynn contends that allegations in her complaint raise concerns of possible collusive activity that should be imputed to US Bank. *See* Appellant's Brief at 28. This is because the same attorney who represented US Bank during the foreclosure process – Lester Castellow – later represented Messrs. Jarriel and Sikes, the putatively colluding buyers, as they sought to evict Ms. Lynn from the foreclosed property. *See* D.E. 25 at ¶¶ 36 and 44. Yet Ms. Lynn did not allege that Mr. Castellow knew of any such collusion or that he worked in concert with Messrs. Jarriel and Sikes during the foreclosure process, let alone directed US Bank to act pursuant to such a conspiracy. As noted earlier, in order to properly state a claim, a complaint must provide "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The allegation that Mr. Castellow colluded with Messrs. Jarriel and Sikes, and that such collusion was endorsed or directed by US Bank, is simply not conceivable on the face of the complaint.

**B.**

Second, Ms. Lynn says she alleged that a flawed chain of title to the property discouraged potential bidders, resulting in a grossly inadequate sale price.

10

Ms. Lynn points to US Bank's designation as "Custodian/Trustee" on the Security Deed as a possible source of doubt for potential buyers whether US Bank had legitimate authority to conduct the foreclosure sale. We disagree, and find unpersuasive Ms. Lynn's reliance on a non-binding practitioner's guide. *See* Appellant's Brief at 26 (citing to "Revised Title Standards," Real Property Law Section, State Bar of Georgia, June 3, 2010). Ms. Lynn cites no binding authority to support her contention that an assignment of a Security Deed is defective simply because the grantee is designated a "Custodian/Trustee." It is therefore implausible that such a designation, alone or in concert with any other facts averred in the complaint, could depress the sale price.

Moreover, we disagree with Ms. Lynn that certain inconsistent terms listed on the cover sheet to the assignment of the Security Deed rendered the chain of title flawed. That cover sheet plainly states that "this cover page is for recording purposes only and does not modify or amend the terms of the attached instrument." Cover Pager to October 15, 2003 Assignment, D.E. 5-2 at 26.

## C.

Third, Ms. Lynn argues that by offering the property for sale as a single parcel, rather than splitting the property into smaller, more affordable tracts, US Bank discouraged potential purchasers who were unable to afford the more costly

11

single parcel.  US Bank's composition of the sale, according to Ms. Lynn, directly resulted in the grossly inadequate price.  She admits, however, "that the Security Deed permitted a foreclosure sale of the six non-contiguous tracts comprising the Property as one parcel."  Appellant's Brief at 30.  *See also* Security Deed, D.E. 1-5 at 17. ("Lender may sell the Property, or any part thereof or any interest therein, separately, at Lender's discretion").  We agree with the district court that the decision to sell the property as a single parcel, a decision permitted by both the Security Deed and Georgia law, cannot serve as a valid allegation that US Bank breached its duty.  *See Marett Properties, L.P. v. Centerbank Mortg. Co.*, 419 S.E.2d 113, 115 (Ga. Ct. App. 1992) ("Since there was no requirement in the security deed in the case presently before us that the property be sold as individual lots, a bulk sale was permissible."); *Classic Enter., Inc. v. Continental Mortg. Investors*, 217 S.E.2d 411, 412 (Ga. Ct. App. 1975) ("There was no requirement that the appellee sell the property in individual tracts where there was no stated obligation to that effect in the security deed itself.").

## V.

To withstand a motion to dismiss, the facts alleged in a complaint must state a claim plausible on its face.  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Iqbal*, 556 U.S. at 679 (internal quotation

marks omitted).  Because Ms. Lynn's allegations fail to state any plausible claim, we affirm the district court's grant of the motion to dismiss.

**AFFIRMED**.