[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-12039

_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 6, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 03-00204-CV-1

BRANDI M. DEARTH,

                                                      Plaintiff-Appellant,

versus

RICHARD L. COLLINS,
INFO PRO GROUP, INC.,

                                                      Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

**(March 6, 2006)**

Before BLACK, HULL and FARRIS[*], Circuit Judges.

_____

[*]Honorable Jerome Farris, United States Circuit Judge for the Ninth Circuit, sitting by designation.

PER CURIAM:

Appellant Brandi M. Dearth ("Dearth") is a former employee of InfoPro Group, Inc. ("InfoPro"). From June 13, 2001 until her termination on November 8, 2002, Dearth was the administrative assistant to Richard L. Collins ("Collins"), InfoPro's president, director, and sole shareholder. Dearth filed suit against both InfoPro and Collins, asserting that Collins repeatedly made sexual suggestions and advances toward her and touched her in a sexual manner. Count One of Dearth's complaint asserts a claim of sexual harassment, in violation of Title VII of the Civil Rights Act of 1964. See 42 U.S.C. § 2000e-2 ("Title VII"). After review and oral argument, we affirm the district court's grant of summary judgment to both defendants.[1]

## I.  Collins

As to Collins individually, the district court properly concluded that a Title VII claim may be brought against only the employer and not against an individual employee.

Dearth acknowledges that this Court has previously held that "'[t]he relief

---

[1]Dearth's complaint also contains Counts Two through Seven and includes a Title VII retaliation claim as well as state law claims of assault and battery, negligent supervision, and intentional infliction of emotional distress. However, Dearth does not appeal the district court's grant of summary judgment to the defendants on her retaliation claim or the district court's dismissal without prejudice of her state law claims. As such, we do not discuss those claims.

granted under Title VII is against the employer, not [against] individual employees whose actions would constitute a violation of the Act.'" Hinson v. Clinch County Bd. of Educ., 231 F.3d 821, 827 (11th Cir. 2000) (citation omitted); Busby v. City of Orlando, 931 F.2d 764, 772 (11th Cir. 1991) (also holding that "[i]ndividual capacity suits under Title VII are . . . inappropriate"). However, Dearth asserts that our previous decisions on this point involved only government employers and supervisors, as opposed to private employers and supervisors (such as InfoPro and Collins). As such, Dearth urges us to conclude that, at least "under appropriate circumstances," a harassing supervisor in the private sector, such as Collins, should be held individually liable for a Title VII violation.

We reject Dearth's argument. As the district court correctly recognized, there is nothing in Title VII, Hinson, Busby, or anywhere else in our precedent that suggests that Title VII's limitation of liability to employers is applicable only in situations where the employer is a public entity. To the extent that we have not so held before, we now expressly hold that relief under Title VII is available against only the employer and not against individual employees whose actions would constitute a violation of the Act, regardless of whether the employer is a public company or a private company. See Hinson, 231 F.3d at 827; Busby, 931 F.2d at 772.

Our holding in this regard is in accordance with the majority of our sister circuits that have addressed this question. See, e.g., Wathen v. General Elec. Co., 115 F.3d 400, 404-05 (6th Cir. 1997) (concluding that an individual employee or supervisor who does not otherwise qualify as an "employer" may not be held personally liable under Title VII, and collecting cases from the "majority of our sister circuits" that support that holding); see also Grant v. Lone Star Co., 21 F.3d 649, 651-53 (5th Cir. 1994) (concluding that the plaintiff had offered "no persuasive argument why Congress would not have intended to protect private employees, as well [as public employees], from individual [T]itle VII liability" and holding that Title VII "does not permit the imposition of liability upon individuals unless they meet [T]itle VII's definition of 'employer'").

Dearth also argues that even if individual employees generally cannot be held liable under Title VII, we should make an exception to this rule in the private sector based on the "alter ego" doctrine. Dearth concedes that the corporation "InfoPro was her 'official' employer," but she contends that "InfoPro was Collins'[s] alter ego and . . . [as such,] both he and the corporation should be liable to her under Title VII." (emphasis added). Dearth asks us to disregard InfoPro's corporate form and to pierce its corporate veil under Georgia law in order to hold Collins individually liable under Title VII.

4

We reject Dearth's position on two grounds. First, there is nothing in Title VII that supports Dearth's claim that individual capacity liability can be imposed on the basis of the alter ego doctrine, and the only circuit that we found to have addressed the issue rejected the argument. See Worth v. Tyer, 276 F.3d 249, 262 (7th Cir. 2001) (rejecting alter ego theory of individual capacity liability in Title VII lawsuit against the president of a company and citing EEOC v. AIC Security Investigations, Ltd., 55 F.3d 1276, 1282 n.11 (7th Cir. 1995)).[2] In AIC Security Investigations, the Seventh Circuit rejected the theory that Vrdolyak, the individual defendant and sole shareholder of AIC Security Investigations, Ltd. ("AIC"), could be held individually liable under the ADA. The Seventh Circuit found nothing in the ADA to support individual liability and noted that "[t]he employing entity is still [potentially] liable." 55 F.3d at 1282. The plaintiffs nevertheless argued, as Dearth does here, that "even if individuals cannot be liable under the ADA, Vrdolyak can somehow be liable as AIC's 'alter ego.'" Id. at 1282 n.11. The Seventh Circuit, however, saw "no good reason why it should make any difference

---

[2]In EEOC v. AIC Security Investigations, Ltd., the Seventh Circuit concluded that the plaintiffs had waived the alter ego argument, but subsequently discussed, in dicta, the merits of whether the alter ego doctrine could be used to impose individual liability under the Americans with Disabilities Act ("ADA"). Title VII, the ADA, and the Age Discrimination in Employment Act all have similar definitions of "employer" and "[c]ourts routinely apply arguments regarding individual liability to all three statutes interchangeably." AIC Security Investigations, 55 F.3d at 1279-80. We do the same here by relying on AIC Security Investigations as persuasive authority.

5

for our analysis whether Vrdolyak was AIC's alter ego" and stated that "as to [Vrdolyak's] individual capacity liability, it does not matter even if she was AIC's alter ego." Id.; see also Worth, 276 F.3d at 262. The Seventh Circuit acknowledged that if a sole shareholder abused the corporate form and the corporate veil were pierced, the sole shareholder might feel the financial "pinch." See AIC Security Investigations, 55 F.3d at 1282 n.11 (noting that Vrdolyak "might be effectively liable if the corporate veil were pierced, and as sole shareholder, she will necessarily absorb the pinch from AIC's liability"). However, as the Seventh Circuit also recognized, that issue is separate and apart from the question of whether the alter ego doctrine can provide an independent basis for individual capacity liability under Title VII in the first place. Id. Furthermore, in this case, there is no allegation that InfoPro is insolvent or unable to pay any Title VII judgment against it. We thus agree with the Seventh Circuit and conclude that the alter ego doctrine does not create an exception to the rule against individual employee liability in Title VII cases.

Second, and in any event, Dearth has failed as a matter of law to establish that Collins is InfoPro's alter ego. Under Georgia corporate law,[3] individual

---

[3]The parties agree that Georgia law governs the elements of the alter ego doctrine. Thus, we do not decide whether Georgia or federal law would govern the applicability of the doctrine in Title VII cases or the elements of the doctrine.

shareholders and officers of a corporation are "shielded by the corporate veil, in the absence of fraud or abuse of the corporate form." Moore v. Barge, 210 Ga. App. 552, 554, 436 S.E.2d 746, 749 (1993). The corporate veil occasionally can be pierced by operation of the alter ego doctrine, but the alter ego doctrine applies only if three requirements are met. Specifically,

> "[t]o establish the alter ego doctrine it must be shown [1] that the stockholders' disregard of the corporate entity made it a mere instrumentality for the transaction of their own affairs; [2] that there is such unity of interest and ownership that the separate personalities of the corporation and the owners no longer exist; and [3] to adhere to the doctrine of corporate entity would promote injustice or protect fraud."

McLean v. Cont'l Wingate Co., 212 Ga. App. 356, 359, 442 S.E.2d 276, 279 (1994) (quoting Custom Lighting & Decorating, Ltd. v. Hampshire Co., 204 Ga. App. 293, 295-96, 418 S.E.2d 811, 814 (1992)). To justify piercing the corporate veil, "'the plaintiff must show [that] the owner abused the corporate form by disregarding the separateness of legal entities by commingling [funds] on an interchangeable or joint basis or confusing the otherwise separate properties, records, or control.'" Rasheed v. Klopp Enters., Inc., 276 Ga. App. 91, 95 n.4, 622 S.E.2d 442, 446 n.4 (2005) (citation omitted).

Dearth points to no evidence that Collins disregarded InfoPro's corporate form; that Collins used InfoPro to transact his own affairs or commingled

7

InfoPro's funds with his own funds; or that Collins is hiding behind InfoPro's corporate form in order to protect his own fraudulent behavior. See McLean, 212 Ga. App. at 359, 442 S.E.2d at 279. As noted above, there is also no allegation that it is necessary to disregard the corporate form to satisfy any Title VII judgment that Dearth might obtain against InfoPro. Put another way, adherence to the doctrine of corporate entity in this case does not promote injustice or protect fraud. See Baillie Lumber Co. v. Thompson, 279 Ga. 288, 289-90, 612 S.E.2d 296, 299 (2005) (piercing of the corporate veil in Georgia is appropriate in order to "remedy injustices," is generally governed by equitable principles, and is appropriate "'only in the absence of adequate remedies at law'") (citation omitted); see also Worth, 276 F.3d at 262 ("The problem with the 'alter ego' theory [of individual liability in Title VII cases] is that it seeks to impose liability upon shareholders without a showing of fraud or injustice.").

For all of the foregoing reasons, we reject Dearth's argument that she should be allowed to sue and recover against Collins individually under Title VII.[4]

## II.   InfoPro

The district court granted InfoPro's motion for summary judgment on two

---

[4]We similarly find no merit in Dearth's argument that the district court abused its discretion in striking five paragraphs of her thirty-six paragraph affidavit in response to defendants' motions for summary judgment.

alternative grounds. First, the district court concluded that summary judgment was appropriate for InfoPro because Dearth failed to present any evidence that Collins's alleged sexual harassment conduct was sufficiently severe or pervasive to create a hostile work environment and to alter the terms and conditions of her employment. See Hulsey v. Pride Rests., LLC, 367 F.3d 1238, 1244-45 & n.3 (11th Cir. 2004); Mendoza v. Borden, Inc., 195 F.3d 1238, 1245 (11th Cir. 1999) (en banc). Second, the district court concluded that even if Dearth had established a prima facie case of sexual harassment against InfoPro, summary judgment was still appropriate for InfoPro because the so-called Faragher-Ellerth affirmative defense barred Dearth's claims. See Faragher v. City of Boca Raton, 524 U.S. 775, 118 S. Ct. 2275 (1998); Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 118 S. Ct. 2257 (1998).

We first conclude that Collins's alleged conduct was sufficiently severe and pervasive to establish a prima facie case of hostile work environment sexual harassment. However, we agree with the district court's conclusion that the Faragher-Ellerth defense bars Dearth's claims against InfoPro. Under the facts of this case, the district court correctly concluded that (1) InfoPro exercised reasonable care to prevent and promptly correct any sexually harassing behavior, by virtue of its sexual harassment policy in its employee handbooks; and (2)

9

Dearth unreasonably failed to take advantage of any preventative or corrective opportunities provided by InfoPro, or to otherwise avoid harm, by failing to notify anyone at InfoPro of Collins's alleged harassment.[5]  Faragher, 524 U.S. at 807, 118 S. Ct. at 2292-93; Ellerth, 524 U.S. at 765, 118 S. Ct. at 2270.  Indeed, Dearth did not make any claims of sexual harassment until she was advised of her termination.  Once InfoPro was informed of the alleged sexual harassment, an investigation was immediately conducted by InfoPro's legal counsel.  Dearth's arguments that the Faragher-Ellerth defense does not apply here lack merit.[6]

_____

[5]InfoPro's employee handbook provides that "[a]n employee who believes that he or she has been subject to harassment or hostile conduct and an employee who witnesses harassment should immediately notify their supervisor or the Human Resources Department."

[6]Although Dearth focuses on her hostile work environment sexual harassment claim, Dearth also asserts that she was terminated because she refused Collins's sexual advances.  To the extent that Dearth asserts a separate wrongful termination claim, that claim is not subject to the Faragher-Ellerth defense.  See Hulsey, 367 F.3d at 1245-46 (explaining that while the Faragher-Ellerth defense is available to bar hostile work environment sexual harassment claims, the defense cannot be used to bar claims of "tangible employment action" sexual harassment, where an employee's refusal to acquiesce to a supervisor's sexual advances results in a specific hiring, firing, reassignment, significant change in benefits, or denial of promotion).  However, Dearth's wrongful termination fails because InfoPro presented unrebutted evidence that other InfoPro employees complained repeatedly about Dearth's rude behavior and attitude and that Collins had originally intended to terminate Dearth in February 2002 (until Dearth convinced Collins otherwise).  In November 2002, the employee complaints about Dearth increased, including complaints from Teresa Rhodes and Rhonda Martin in emails to Collins.  Additionally, the receptionist reportedly quit because she could no longer work with Dearth.  InfoPro established that Dearth was terminated for her job performance, and the evidence did not establish any causal link between her termination and the alleged sexual harassment.  See Frederick v. Sprint/United Mgmt. Co., 246 F.3d 1305, 1312 (11th Cir. 2001) (recognizing that there must be a causal link between the sexual harassment and the tangible adverse employment action allegedly suffered by the employee).  Thus, Dearth's claims are more appropriately considered as hostile work environment sexual harassment claims, and we are able to dispose of those claims via the Faragher-Ellerth doctrine.

## III.  <u>**Summary**</u>

For all of the above reasons, we affirm the district court's grant of summary judgment to Collins and InfoPro.

**AFFIRMED.**