[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-13405
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cv-04437-WSD


ERIKA JACOBS,

Plaintiff-Appellant,

versus

TRICIA BIANDO,
LIBERTY TAX,
KRISTY FREITAS, et al.

Defendants-Appellees.


_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(November 24, 2014)

Before TJOFLAT, HULL and WILSON, Circuit Judges.

PER CURIAM:

Erika Jacobs, proceeding pro se and in forma pauperis, appeals the district court's dismissal of her pro se amended complaint against her former employer, Tricia Biando, owner of the fanchise Liberty Tax.  Jacob's pro se amended complaint alleged, inter alia, racially discriminatory discharge and racially hostile work environment, pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2(a)(1), as well as various state law claims.[1]  The district court dismissed Jacob's amended complaint sua sponte and without prejudice for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  After review, we affirm.

## I.  FACTUAL ALLEGATIONS

According to her amended complaint, during the 2011 and 2012 tax seasons, Plaintiff Jacobs, who is African American, worked as a tax preparer at one of Biando's Liberty Tax offices.  During this time, Jacob's supervisor was Defendant Kristy Freitas, and one of her coworkers was Defendant Snowden.[2]  Biando, Freitas and Snowden are white.[3]

---

[1]Jacobs also alleged a retaliation claim under Title VII and claims under the Equal Pay Act, 29 U.S.C. § 206(d), and the Fair Labor Standards Act, 29 U.S.C. § 201, et seq.  Because on appeal Jacobs raises no meaningful arguments as to these claims, they are deemed abandoned. See Singh v. U. S. Att'y Gen., 561 F.3d 1275, 1278 (11th Cir. 2009); Access Now, Inc. v. Southwest Airlines Co., 385 F.3d 1324, 1330 (11th Cir. 2004).

[2]Although Jacobs's amended complaint named Freitas and Snowden as defendants, a Title VII claim "may be brought against only the employer and not against an individual employee."  Dearth v. Collins, 441 F.3d 931, 933 (11th Cir. 2006).  Thus, to the extent Jacobs

2

According to the amended complaint, Freitas engaged in various conduct to undermine Plaintiff Jacobs at work, including: (1) intentionally withholding from Jacobs information Freitas told "all other employee's [sic]," such as new procedures for processing state tax returns or cell phone usage; (2) instructing Jacobs to give customer discounts, but then later claiming Jacobs gave too many customer discounts; (3) falsely claiming that Jacobs had violated work policies, such as attendance, and had demanded more work hours and a promotion; and (4) treating other employees "with favoritism: they were trusted more, were well informed of all changes, and were received in a more pleasant manner" by Freitas and Biando.[4]  Freitas was '[h]ostile to questions [Jacobs] ask[ed]," and interpreted Jacobs's "feeling in a negative way."  Additionally, Freitas's "tone toward [Jacobs] before customers [was] demeaning on a couple of occasions."

In addition to these general allegations of mistreatment, Jacobs's amended alleged two incidents of "Racism."  First, in the 2011 tax season, Jacobs had an "altercation" with Snowden when "Snowden went against policy for tax preparers

---

asserted Title VII claims against Defendants Freitas and Snowden, the district court properly dismissed them.

[3]Although page 3 of Jacobs's amended complaint identifies Snowden as a supervisor, Jacobs's appeal brief states that the district court misread her amended complaint and that Freitas was her supervisor, and Snowden "was an employee at the time of the discriminatory events."

[4]In paperwork filed with the Equal Employment Opportunity Commission, attached to Jacobs's amended complaint, Jacobs stated that she overheard a telephone conversation between Freitas and an unknown employee about Freitas "showing favoritism in distribution of hours to other employees" and that Freitas "instructed the employee to not discuss the above concern with other employees."

3

and they're [sic] customers." During the altercation, Snowden "stated he was better than [Jacobs], attempted to fire [Jacobs] without authority and [made] a physical demonstration of racial dislike." Jacobs does not say what Snowden did physically. Although Jacobs had never had problems with Snowden before, Defendant Biando "used that one incident and fictionalized all [Jacobs's] past interactions with Snowden."

Second, during a ten-week training course and the 2012 tax season, Freitas "made racial comments/inference." Specifically, Freitas made comments "about how African American females should get along, [Jacobs's] character, and etc."

In early February 2012, things came to a head when Freitas falsely accused Jacobs of mishandling two customers—when in fact it was Freitas who was to blame—and then decreased the number of hours Jacobs was scheduled to work, claiming that "peak season" was over—when in fact peak season did not end for another week. When Jacobs discovered on February 22, 2012 that Freitas had again decreased Jacobs's hours, Jacobs asked Freitas about the schedule change "in a pleasant tone." Freitas became "hostile" and "defensive," told Jacobs that she did not have to justify herself, and gave "new reasons" for the decreased hours having to do with Jacobs's availability. When Jacobs asked Freitas if she "could keep [Jacobs] around 12 hours because this was [Jacobs's] only job," Freitas responded, "ok."

4

The next day, however, Freitas called Jacobs into her office and said "she was going to have to let [Jacobs] go because [of]" co-worker and customer complaints and Jacobs's asking about her hours and questioning Freitas's authority.  Jacobs alleges that all of Freitas's reasons for terminating Jacobs were false.  In fact, Jacobs was a good tax preparer who was friendly and courteous to all customers and to her co-workers.

## II.  DISCUSSION

### A.    Failure to State a Claim

Dismissal for failure to state a claim is appropriate if the complaint's factual allegations fail to state a claim for relief that is "plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009); see also Bell Atl. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level.").[5]  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949.

"Although a Title VII complaint need not allege facts sufficient to make out a classic McDonnell Douglas prima facie case, it must provide enough factual

---

[5]We review de novo a dismissal under § 1915(e)(2)(B)(ii) for failure to state a claim, accepting the complaint's allegations as true and applying the same standards that govern dismissals under Federal Rule of Civil Procedure 12(b)(6).  Alba v. Montford, 517 F.3d 1249, 1252 (11th Cir. 2008).

matter (taken as true) to suggest intentional race discrimination." Davis v. Coca-Cola Bottling Co., 516 F.3d 955, 974 (11th Cir. 2008) (citation and quotation marks omitted). Further, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949. While we construe pro se pleadings liberally, Alba, 517 F.3d at 1252, we do not have "license to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." GJR Invs., Inc., v. Cnty. of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998) (citation omitted), overruled on other grounds by Iqbal, 556 U.S. 662, 129 S. Ct. 1937 (2009).

## B.    Jacobs's Amended Complaint

Even construed liberally, the factual allegations in Jacobs's amended complaint fail to "suggest intentional race discrimination." See Davis, 516 F.3d 974. To be sure, Jacobs's allegations, taken as true, establish that Freitas was a poor supervisor who treated Jacobs badly and terminated Jacobs based on trumped-up accusations.[6] But, it is axiomatic that Title VII prohibits only discrimination and is not a "general civility code," Reeves v. C.H. Robinson Worldwide, Inc., 594 F.3d 798, 809 (11th Cir. 2010), or "a shield against harsh treatment at the work place." Succar v. Dade Cnty Sch. Bd., 229 F.3d 1343, 1345 (11th Cir. 2000); see

---

[6]Jacobs's amended complaint does not allege whether it was Biando or Freitas who made the decision to terminate her. Construing Jacobs's allegations liberally, we treat both Biando and Freitas as decisionmakers.

also Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1266 (11th Cir. 2010)

(explaining that Title VII is not concerned with the wisdom of an employer's

decisions, so long as they "were not made with a discriminatory motive").

To be actionable under Title VII, the harassing conduct or the adverse

employment action must be because of the employee's protected characteristic, in

this case race.  See Reeves, 594 F.3d at 809 n.3 (addressing hostile work

environment claim); Stimpson v. City of Tuscaloosa, 186 F.3d 1328, 1331 (11th

Cir. 1999) (addressing discriminatory discharge claim).  Jacobs, however, did not

allege that the reason Freitas mistreated her or falsely accused and then fired her

was because she was African American.

Even if we liberally construe Jacobs's amended complaint to infer such a

conclusory allegation, Jacobs did not allege any specific facts to support it.  For

example, Jacobs did not allege that Freitas treated similarly-situated employees

who were not African American more favorably or that Jacobs was replaced by an

employee that was not African American.[7]  At a minimum, Jacobs needed to allege

enough facts to "draw the reasonable inference" that Freitas's actions were

motivated by racial animus.  See Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949.  A

threadbare allegation that an employee believes she was discriminated against

because of her race is not enough to "raise a right to relief above the speculative

[7]Notably, while Jacobs alleged that Freitas showed favoritism to "other employees," she did not identify the race of these other employees or allege that the favoritism was based on race.

7

level." See id. (explaining that mere conclusory statements do not satisfy Twombly's facial plausibility standard); Davis, 516 F.3d at 974.

The only allegation about Freitas that relates at all to race is that Freitas made some comments that African-American women "should get along." There were no additional allegations, however, to connect these comments to Freitas's treatment or termination of Jacobs. Such general, race-based comments, unrelated to the complained-of conduct, do not suggest that Freitas singled Jacobs out for harassment or terminated her because she was African American.

As to Defendant Snowden, Jacobs's allegations at best are an attempt to state a racially hostile work environment claim, but fail as well. Jacobs alleged only a one-time altercation, in which Snowden said he was better than Jacobs and tried to fire her. Even assuming Snowden's accompanying "physical demonstration of racial dislike" indicated his statements were motivated by Jacob's race, the altercation was an isolated incident that was not severe or pervasive enough to create a hostile work environment. See Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S. Ct. 2275, 2283 (1998) (stating that isolated incidents that are not extremely serious are not sufficiently severe or pervasive to create an objectively hostile work environment); see also Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1276-77 (11th Cir. 2002) (explaining that the "mere utterance" of an epithet does not implicate Title VII). Furthermore, as Jacobs's coworker, Snowden was

8

"without authority" to fire Jacobs.  Thus, Snowden's conduct, while upsetting to Jacobs, did not actually result in an adverse employment action.  See Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1239 (11th Cir. 2001) (explaining that an adverse employment action requires a significant change in employment status, such as firing, failing to hire or promote, or significantly changing responsibilities or benefits).

For all these reasons, Jacobs's amended complaint failed to state a facially plausible claim of either discriminatory discharge or a racially hostile work environment under Title VII.  Accordingly, the district court did not err in dismissing Jacob's amended complaint without prejudice.[8]

**AFFIRMED.**

---

[8]Because the district court properly dismissed Jacobs's federal claims, the district court did not abuse its discretion in declining to exercise supplemental jurisdiction over her remaining state law claims.  See 28 U.S.C. § 1367(c)(3); Raney v. Allstate Ins. Co., 370 F.3d 1086, 1088-89 (11th Cir. 2004).