**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————————

No. 25-12124

Non-Argument Calendar

————————————————

DEBRA NEVINS,

*Plaintiff-Appellant,*

*versus*

DCH HEALTH SYSTEMS,
  The DCH Health Care Authority,
REBECCA BOUTWELL,
COURTNEY WINGO,
FELICIA ELLISON,

*Defendants-Appellees.*

————————————————

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 7:23-cv-01037-RDP

————————————————

Before LUCK, LAGOA, and ANDERSON, Circuit Judges.

PER CURIAM:

Debra Nevins appeals the district court's order granting the defendants' motions for summary judgment on her claims for racial discrimination, retaliation, and harassment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a), 2000e-3(a), and 42 U.S.C. § 1981. First, she argues that the district court erred in granting summary judgment on her racial discrimination claim because she presented sufficient circumstantial evidence to support a reasonable inference that she was terminated at least partly because of her race instead of her failure to comply with the flu vaccine policy. Second, she argues that the district court erred in granting summary judgment on her retaliation claim because she established that her relocation to a different workspace and appeal of her award of unemployment benefits were retaliatory to her email alleging discrimination or her Equal Employment Opportunity Commission ("EEOC") charge. Finally, she argues that the district court erred in granting summary judgment on her harassment claim because she demonstrated sufficiently severe or pervasive harassment to support a claim of a hostile work environment.

## I. DISCUSSION

### A. Standard of Review

We review a district court's grant of summary judgment *de novo*. *Ismael v. Roundtree*, 161 F.4th 752, 758 (11th Cir. 2025). In doing so, we view all evidence and factual inferences reasonably drawn from the evidence in the light most favorable to the non-moving party. *Id.*

A court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (quoting Fed. R. Civ. P. 56(a)). There is no genuine issue of material fact when a rational trier of fact cannot find for the non-moving party based on the record. *Id.*

## B. Racial Discrimination

Title VII forbids employment discrimination against any person on the basis of their race or color. 42 U.S.C. § 2000e-2(a). Section 1981 also prohibits race discrimination in the making and enforcement of public and private contracts, including employment contracts. *Ferril v. Parker Grp., Inc.*, 168 F.3d 468, 472 (11th Cir. 1999). Discrimination claims under § 1981 and Title VII are subject to the same analysis. *Bryant v. Jones*, 575 F.3d 1281, 1296 n.20 (11th Cir. 2009). However, Title VII does not allow for individual liability. *Dearth v. Collins*, 441 F.3d 931, 933 (11th Cir. 2006).

In evaluating claims of discrimination based on circumstantial evidence, courts may use the burden-shifting evidentiary framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Ismael*, 161 F.4th at 759-60, 764. Under *McDonnell Douglas*, the plaintiff first may show a prima facie case by demonstrating "(1) that she belongs to a protected class, (2) that she was subject to an adverse employment action, (3) that she was qualified to perform the job in question, and (4) that her employer treated 'similarly situated' employees outside her class more favorably."

*Lewis v. City of Union City, Ga.* 918 F.3d 1213, 1220-21 (11th Cir. 2019) (en banc) (quotation marks omitted).  A comparator must be "similarly situated in all material respects," meaning that the plaintiff and the comparator are "sufficiently similar, in an objective sense" and "cannot reasonably be distinguished."  *Id.* at 1218, 1228 (quotation marks omitted).  This standard requires a case-by-case analysis, and minor differences in job functions between a plaintiff and a comparator are not dispositive as to whether they are similarly situated.  *Id.* at 1227.  However, a similarly situated comparator will ordinarily have engaged in the same basic conduct as the plaintiff, will have had the same supervisor, and will share the plaintiff's employment or disciplinary history.  *Id.* at 1227-28.

If the plaintiff establishes a prima facie case, "she is entitled to a rebuttable presumption of illicit intent."  *Ismael*, 161 F.4th at 764.  The burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action.  *Id.* at 759.  If "the defendant comes forth with evidence and successfully rebuts the presumption, 'the *McDonnell Douglas* framework—with its presumptions and burdens—is no longer relevant.' It 'simply drops out of the picture.'"  *Id.* at 764 (citations omitted) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510-11 (1993)).  In that case, "the court must proceed to ask whether 'the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination . . . by the decisionmaker.'"  *Id.* (quoting *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th

Cir. 2011)).  The "convincing mosaic" is a metaphor for the summary judgment standard by which a plaintiff may overcome a motion for summary judgment by presenting circumstantial evidence of any form that creates a triable issue of the employer's discriminatory intent.  *McCreight v. AuburnBank*, 117 F.4th 1322, 1335-37 (11th Cir. 2024).  Evidence that an employer's nondiscriminatory reason is pretext for discrimination is relevant to this inquiry, but "a plaintiff's inability to disprove the defendant's rationale cannot be the sole grounds for summary judgment."  *Ismael*, 161 F.4th at 764.  To establish pretext, the plaintiff "must demonstrate 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'"  *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1136 (11th Cir. 2020) (en banc) (quoting *Jackson v. State of Alabama State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005)).

If, on the other hand, the plaintiff does not establish a prima facie case, "the consequence is that the plaintiff must produce enough evidence, on her own and without any helpful evidentiary burdens or presumptions, to demonstrate a material issue of triable fact."  *Ismael*, 161 F.4th at 765.  In other words, "the court should advance directly to the convincing mosaic inquiry."  *Id.*

A § 1981 discrimination claim requires proof that race was the but-for cause of an adverse employment action.  *Ossmann v. Meredith Corp.*, 82 F.4th 1007, 1014 (11th Cir. 2023).  Likewise, a single-motive theory of Title VII discrimination requires proof that

illegal discrimination was the but-for cause of an adverse employ-ment action. *McCreight*, 117 F.4th at 1330-31. On the other hand, a mixed-motive theory of Title VII discrimination, by which a plain-tiff alleges that a protected characteristic was a "motivating factor" for an employment practice, 42 U.S.C. § 2000e-2(m), requires proof "that an illegal reason played a part in the decision—not that it had a dispositive role," *McCreight*, 117 F.4th at 1331. Mixed-motive and single-motive are not distinct claim types, but instead "offer alter-native theories of causation for proving discrimination under Title VII." *Id.* Therefore, the plaintiff need not allege a mixed-motive theory in her complaint, but she still must raise the mixed-motive theory for the district court to consider it at summary judgment. *Id.* at 1331-32; *see id.* at 1333 (evaluating discrimination claim under single-motive theory on appeal because the plaintiff only cited one mixed-motive case to the district court and never argued to the dis-trict court "that a mix of legitimate and illegitimate motives played a role in her firing"). The *McDonnell Douglas* framework is not ap-propriate for evaluating mixed-motive theories of discrimination at summary judgment. *Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227, 1238 (11th Cir. 2016). Instead, a court must evaluate whether there is sufficient evidence to support a reasonable inference that a pro-tected characteristic was a motivating factor for an adverse employ-ment action. *Id.* at 1239.

As initial matters, first, the district court correctly entered summary judgment in favor of the individual defendants as to the Title VII claims because Title VII does not provide individual liabil-ity, though the race discrimination claims may be considered

against the individual defendants under § 1981. *Dearth*, 441 F.3d at 933. Second, though DCH argues that Nevins did not raise a mixed-motive theory of causation to the district court to preserve it for appeal, the district court nevertheless explained the difference between the single-motive and mixed-motive theories of causation that could support discrimination claims and it substantively evaluated whether the record showed that race played any role in any employment decision. Though Nevins focuses her appellate arguments primarily on but-for causation, she also argues that her race was a motivating factor in her termination and reports ample caselaw on the mixed-motive theory, so this Court may consider whether any evidence shows that her race played any part in an adverse employment decision for purposes of her Title VII claims. *Quigg*, 814 F.3d at 1239. Third, to the extent Nevins advances a mixed-motive theory of causation as to her § 1981 claims, that is not appropriate because § 1981 requires proof of but-for causation. *Ossmann*, 82 F.4th at 1014.

Here, the district court correctly concluded that Nevins could not establish a prima facie case of discrimination against any of the defendants and, even if she had, the defendants rebutted the inference of discrimination, and the record did not contain a convincing mosaic of circumstantial evidence showing discrimination played any part in her termination. T.W. was not a valid comparator and was not similarly situated to Nevins in all material respects because she applied for, and obtained, a religious exemption based on her professed sincerely held religious belief, in line with DCH policy. Nevins, on the other hand, only submitted a note from her

physician that said, "Patient is exempt for religious purposes," without professing any particular religious belief. Indeed, Nevins explicitly testified that she did not have a particular religious belief that prevented her from receiving the flu vaccine and that she did not want a "religious" note from her physician because it would be a "lie." Further, Nevins suggests that the district court misinterpreted "similarly situated in all material respects," but, because Nevins's allegation is that the defendants wrongly denied her medical exemption requests,[1] the type of exemption request submitted

---

[1] Nor is there any genuine dispute that the notes from Nevins's physician failed to satisfy the proof that the DCH policy required for an exemption. The policy provided:

> Exemption to immunization may be granted for medical contraindications after Employee Health receives appropriate proof. Ex: letter from primary care physician including medical contraindication[.]

> [. . .]

> If an employee requests a religious belief exemption, they must provide this in writing to Employee Health

With respect to Nevins's medical exemption request, her physician's first note merely stated that Nevins desired an exemption, and that the physician had advised her of the risks of not getting the vaccination. The note did not satisfy the critical requirement of the policy—i.e. the doctor's statement that the vaccination was medically contraindicated for Nevins. The physician's second note was identical, adding only that Nevins had a history of Lupus, but with no indication that the flu vaccination was contraindicated. Indeed, one of the DCH doctors testified that the flu vaccination was not contraindicated for a person with a history of Lupus, and there was no contrary evidence.

by a purported comparator is necessarily material. *Lewis*, 918 F.3d at 1218, 1227-28. Thus, T.W. and Nevins cannot be considered valid comparators, and the different treatment between the two is not circumstantial evidence of discrimination. *Id*.

Even if Nevins had established a prima facie case of racial discrimination, the defendants rebutted it with evidence that DCH terminated her for non-compliance with the vaccine policy, and Nevins did not present any evidence showing that race played any part in her termination. *See Ismael*, 161 F.4th at 764. As to whether the defendants' explanation is pretext, Nevins merely disagreed with the defendants about their choice not to accept her flu vaccine exemption, which demonstrates neither that the reason was false nor that discrimination was the real reason. *Gogel*, 967 F.3d at 1136. Nevins's requests for medical exemption and religious exemption were non-compliant because Lupus was not a contraindication to the flu vaccine, and she never explained to her employer how her religious belief prevented her from getting the vaccine.

In addition to not disputing DCH's race-neutral reason for her termination, the evidence does not create a triable issue of discriminatory intent under either a single-motive or mixed-motive theory. Each alleged racial incident to which Nevins points was

---

With respect to a religious exemption—and wholly aside from Nevins's testimony disavowing the same—the third note from Nevins's physician contained a merely conclusory assertion that Nevins is exempt for religious purposes, with no attempt to satisfy the requirement that employee seeking a religious exemption had to describe their sincerely held religious beliefs on DCH's religious exemption request form.

isolated and happened in the years prior to the vaccine policy change. For example, Boutwell's comments about hair burning and the hoodie were sometime in 2019. The blackface doll incident occurred in December 2019, almost a year before her termination. The incidents, at most, involved Boutwell, who had no discretion when it came to the zero-tolerance vaccine policy. Nevins's prior years of compliance with the policy were unrelated to the new vaccine policy that created new rules for compliance and created a zero-tolerance policy. Further, the email sent months prior to her termination only vaguely suggested racial discrimination and there is no evidence of race factoring into DCH's response to the email. Additionally, the data and testimony from Human Resources showed that race was not relevant in considering who was terminated for failure to comply with the vaccine policy. Rather, every employee who failed to comply either quit, came into compliance, or was terminated. Nevins's disagreement with the defendants' decision regarding her exemption request does not suggest that she was fired for any reason other than non-compliance with the flu vaccine policy, and does not create a triable issue as to her employer's intent. *McCreight*, 117 F.4th at 1335-37.

Accordingly, we affirm the district court on this claim.

*C. Retaliation*

Title VII prohibits an employer from discriminating against any individual because she "has opposed any practice made an unlawful employment practice by [Title VII], or because [s]he has

25-12124                Opinion of the Court                11

made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). Section 1981 also encompasses claims of retaliation. *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 457 (2008). The same analytical framework applies to retaliation claims brought under Title VII and § 1981. *Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1307 (11th Cir. 2023).

Like discrimination claims, retaliation claims are ordinarily analyzed under the *McDonnell Douglas* burden-shifting framework. *Ismael*, 161 F.4th at 759. The prima facie case of retaliation requires the plaintiff to show: "(i) that she engaged in a protected activity, like filing a complaint for discrimination; (ii) that she suffered a material adverse action; and (iii) that there was a causal connection between the protected activity and the adverse action." *Id.* If the plaintiff establishes a prima facie case and the employer rebuts it with a nonretaliatory reason, then the court must evaluate whether the record presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional retaliation, an inquiry to which evidence of pretext is relevant. *Id.* at 764. If the plaintiff does not establish a prima facie case, then the court proceeds directly to the convincing-mosaic inquiry. *Id.* at 765. "Whatever form the evidence takes, 'so long as it raises a reasonable inference' that the employer retaliated against the employee, 'summary judgment is improper.'" *Berry*, 84 F.4th at 1311 (alteration adopted) (quoting *Smith*, 644 F.3d at 1328).

A material adverse action, as required to state a prima facie case of retaliation, is an action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 861 (11th Cir. 2020) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).

As to the causation element of the prima facie case, where temporal proximity is the only evidence of causation, that proximity must be "very close." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). We have held that a gap of three months or longer between the two events, without more, is insufficient to infer causation. *Id.*

Here, the district court correctly granted summary judgment on Nevins's retaliation claim because Nevins could not establish a prima facie retaliation claim and, even if she had, the defendants rebutted it and there was no circumstantial evidence of retaliatory intent. First, her 2014 EEOC charge, which was six years before her termination, is clearly too remote to be considered. Thus, Nevins' April 3, 2020, email is her only relevant protected activity. And that April 3, 2020, email only broadly alleged discrimination and that she had been "singled out," which is insufficient to support a claim of retaliation based on participation in any protected investigation or proceedings. 42 U.S.C. § 2000e-3(a). It is also only weak support for a claim of retaliation based on opposing an unlawful employment practice because it is only a conclusory assertion that

her employer had engaged in an unlawful practice, or that her complained-of treatment was in any way based on her protected characteristics. *Id.*

Second, it is not clear whether Nevins established that she had been subject to any material adverse action. Assuming, *arguendo*, that she could establish that both the relocation of her workspace and DCH's appeal of her unemployment benefits were materially adverse, and that the April 3, 2020, email was protected conduct, she still did not establish any causal connection between the email and the adverse actions. *Ismael*, 161 F.4th at 759. The time gap between her email and her termination was seven months, which is insufficient to establish causation on its own. *Thomas*, 506 F.3d at 1364. Nevins never testified as to when her workspace was relocated, so it cannot be established as temporally proximate to her email, and she provided nothing more to establish causation.

Further, though DCH correctly points out Nevins did not explicitly classify the interference with unemployment benefits as a material adverse action for purposes of a retaliation claim, she did still raise it as an alleged act of harassment that took place after she allegedly engaged in protected activity, so this Court may consider it. Even so, Nevins cannot establish any causal connection between the appeal and her April 3, 2020, email. *Ismael*, 161 F.4th at 759. The time gap between the email and her appeal of unemployment benefits was at least seven months, which is insufficient to establish causation on its own. *Thomas*, 506 F.3d at 1364. Additionally,

Nevins provided nothing more to establish causation, and DCH withdrew its appeal.  Thus, Nevins did not establish a prima facie retaliation claim.  *See Ismael*, 161 F.4th at 759.

Nevins also fails to establish a convincing mosaic of circumstantial evidence to create a triable issue as to DCH's intent. *McCreight*, 117 F.4th at 1335-37.  None of the evidence Nevins contends supports her claim suggests that DCH terminated her employment for any reason other than her failure to comply with the mandatory flu vaccine policy or took any other action in retaliation for protected activity.  Even if her April 2020 email was a protected complaint about unlawful activity, between the time she made that complaint and her termination seven months later, she failed to comply with a mandatory vaccine policy that resulted in the termination of any employee who failed to comply.   She failed to demonstrate that she actually did comply with that policy, that anyone else who failed to comply with the policy was not fired, or that DCH found her noncompliant for any reason other than her failing to receive the vaccine or provide a sufficient exemption to the vaccine.  And, as explained, no circumstantial evidence would suggest a retaliatory motive behind the workspace relocation that occurred at some unknown time.  Thus, there is no evidence that would allow a jury to infer intentional retaliation by DCH.  *Ismael*, 161 F.4th at 764.

Accordingly, we affirm as to this issue.

*D. Hostile Work Environment*

We apply the same standards to evaluate racially hostile work environment claims under § 1981 and Title VII. *Melton v. I-10 Truck Ctr. Inc*, 166 F.4th 905, 916 (11th Cir. 2026). To establish a racially hostile work environment claim, the plaintiff must prove that (1) she is a member of a protected class; (2) she was subjected to "unwelcome" harassment; (3) the harassment was "based on [her] race"; (4) the harassment "was severe or pervasive enough to alter the terms and conditions of [her] employment"; and (5) "the employer is responsible for the environment." *Id.* at 918 (quoting *Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1248-49 (11th Cir. 2014)).

Either severity or pervasiveness suffices to establish the fourth element. *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 808 (11th Cir. 2010) (en banc). Additionally, the fourth element of the hostile-work-environment test contains both a subjective and objective component. *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999) (en banc). The employee must "subjectively perceive" the harassment as severe or pervasive enough to change the terms or conditions of employment, and the district court must find that this perception was objectively reasonable. *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). The objective component is fact intensive, and in making the determination, the following factors should be considered: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the

employee's job performance." *Id.* We examine "conduct in context, not as isolated acts, and determine under the totality of the circumstances whether the harassing conduct is sufficiently severe or pervasive to alter the terms or conditions of the plaintiff's employment and create a hostile or abusive working environment." *Id.* An environment may be unlawfully hostile even if racial remarks are not directed at the employee. *Melton*, 166 F.4th at 918.

Here, the district court did not err in granting defendants summary judgment on Nevins's harassment claim because Nevins did not establish severe or pervasive harassment or that the alleged harassment was based on a protected trait. Nevins identified a variety of incidents of purported harassment, but DCH was correct that only three were arguably based on race—the blackface doll incident and the burning hair and hoodie comments. The other three incidents—revealing that Nevins reported a coworker for a dress code violation, her supervisor's remark about someone else's chicken order, and her supervisor monitoring her—are not based on race and thus cannot support a claim of hostile environment. *Melton*, 166 F.4th at 918.

Even if the doll incident and the two comments were racial in nature, they were not sufficiently pervasive or severe to alter the terms of Nevins's employment. To be clear, an unknown employee hanging a blackface doll by a noose in Nevins's desk area—which disputed evidence supports and is accepted for purposes of summary judgment—is repugnant and racially hostile. However, considering the totality of the circumstances, there is no genuine

issue of objective severity or pervasiveness for a hostile work environment claim. The racial incidents were only three in number over a two-year period, two of which were comments not made in Nevins's presence, and none of which unreasonably interfered with Nevins's job performance. *Mendoza*, 195 F.3d at 1246. Further, Boutwell took prompt remedial action by telling Nevins to throw the doll away. Thus, Nevins has not established sufficiently severe or pervasive harassment to support a claim of hostile work environment.

Accordingly, we affirm as to this issue.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.